Cecilia M. Romero (9570)
John P. Harrington (5242)
Nathan Archibald (14855)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Tel: (801) 799-5800
Fax: (801) 799-5700
jharrington@hollandhart.com
cmromero@hollandhart.com
narchibald@hollandhart.com

*Attorneys for Plaintiff LifeVantage Corporation.*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TEAM MASTER PLAN, LLC, an Arizona limited liability company; BILL DELANEY, an individual; and CYNTHIA DELANEY, an individual, | **DEFENDANT LIFEVANTAGE CORPORATION'S ANSWER AND COUNTERCLAIMS** |
| Plaintiffs, | |
| v. | Civil No. 2:16-cv-00448 |
| LIFEVANTAGE CORPORATION, a Colorado corporation | Judge Dee Benson |
| Defendant. | **(Jury Trial)** |
| LIFEVANTAGE CORPORATION, a Colorado corporation | |
| Counterclaim Plaintiff, | |
| v. | |
| BILL DELANEY, an individual; and CYNTHIA DELANEY, an individual, | |
| Counterclaim Defendants, | |

Defendant and Counterclaim Plaintiff LifeVantage Corporation ("LifeVantage"), by and through its counsel of record Holland & Hart LLP, hereby answers the Complaint filed by Plaintiff and Counterclaim Defendants Bill Delaney and Cynthia Delaney (together, "the Delaneys") and Plaintiff Team Master Plan, LLC ("TMP") (collectively the "Delaney Parties"), and asserts its Counterclaims, as follows. As to the numbered paragraphs in the Delaney Parties' Complaint and adopting the headings therein, LifeVantage states as follows.

## PARTIES

1. As to the allegations of Paragraph 1, LifeVantage admits that TMP is incorporated in Arizona. LifeVantage is without sufficient information to admit or deny as to the members or principal place of business of TMP and on that basis denies the remaining allegations of Paragraph 1.

2. The allegations of Paragraph 2 are admitted.

3. The allegations of Paragraph 3 are admitted.

4. The allegations of Paragraph 4 are admitted.

## JURISDICTION AND VENUE

5. As to the allegations of Paragraph 5, LifeVantage admits the allegations as to the diversity of the parties, and that this Court has jurisdiction of lawsuits in which the amount in controversy is in excess of $75,000.00, but denies that the Delaney Parties are entitled to any damages whatsoever and on that basis denies the remaining allegations.

6. As to Paragraph 6, the allegations are a legal statement to which no response is required; to the extent a response is required the allegations are denied.

7.      As to Paragraph 7, LifeVantage admits the allegations regarding venue, and states that venue is also appropriate in this Court based on the terms and conditions of the Delaney Parties' contracts with LifeVantage.

## DELANEY PARTIES' GENERAL ALLEGATIONS

8.      The allegations of Paragraph 8 are denied.

9.      As to the allegations of Paragraph 9, LifeVantage admits only that the Delaneys are "Master Pro 10" Independent Distributors.  LifeVantage is without sufficient information to admit or deny the remaining allegations of Paragraph 9 and on that basis denies them.

10.     To the extent the Delaney Parties are referencing a written statement in Paragraph 10, the document(s) speaks for itself and any contrary allegations are denied.

11.     The allegations in Paragraph 11 are denied.

12.     LifeVantage is without sufficient information to admit or deny the allegations in Paragraph 12 and on that basis denies them.

13.     As to Paragraph 13, LifeVantage admits that the Delaneys, as Independent Distributors, were given a login and access to LifeVantage's virtual back office, and once logged in the Delaneys could access their current downline, annual revenues and estimated commissions.  LifeVantage is without sufficient information to admit or deny the remaining allegations in Paragraph 13 and on that basis denies them.

14.     As to the allegations of Paragraph 14, LifeVantage's Policy and Procedures speak for themselves, any contrary allegations or characterizations are denied.

15.     As to the allegations of Paragraph 15, LifeVantage's Policy and Procedures speak for themselves, any contrary allegations or characterizations are denied.

16.     LifeVantage is without sufficient information to admit or deny the allegations in Paragraph 16 and on that basis denies them.

17.     LifeVantage is without sufficient information to admit or deny the allegations in Paragraph 17 and on that basis denies them.

18.     LifeVantage is without sufficient information to admit or deny the allegations in Paragraph 18 and on that basis denies them.

19.     The allegations of Paragraph 19 are denied.

20.     LifeVantage is without sufficient information to admit or deny the allegations in Paragraph 20 and on that basis denies them.

21.     The allegations of Paragraph 21 are denied.

22.     As to Paragraph 22, LifeVantage admits that on or about May 15, 2016,  the Delaneys published a notice on Facebook and avers these publications speak for themselves, any contrary allegations or characterizations are denied.  The remaining allegations of Paragraph 22 are denied.

23.     As to Paragraph 23, LifeVantage admits only that the Delaneys had subsequent posts, which posts speak for themselves.  Any contrary allegations or characterizations are denied.  The remaining allegations of paragraph 23 are denied.

24.     LifeVantage admits only that it has suspended the Delaneys' LifeVantage accounts and denies the remaining allegations in Paragraph 24.

25.     The allegations of Paragraph 25 are denied.

26.     The allegations of Paragraph 26 are denied.

27.     The allegations of Paragraph 27 are denied.

28.     The allegations of Paragraph 28 are denied.

### DELANEY PARTIES' FIRST CAUSE OF ACTION
#### (Breach of Contract)

29.     LifeVantage incorporates by reference all preceding responses.

30.     The allegations of Paragraph 30 are denied.

31.     The allegations of Paragraph 31 are denied.

32.     The allegations of Paragraph 32 are denied.

33.     The allegations of Paragraph 33 are denied.

### DELANEY PARTIES' SECOND CAUSE OF ACTION
#### (Breach of the Covenant of Good Faith and Fair Dealing)

34.     LifeVantage incorporates by reference all preceding responses.

35.     The allegation of Paragraph 35 is a legal conclusion to which no response is required, and to the extent a response is required the allegations are denied.

36.     The allegations of Paragraph 36 are denied.

37.     The allegations of Paragraph 37 are denied.

### DELANEY PARTIES' THIRD CAUSE OF ACTION
#### (Promissory Estoppel)

38.     LifeVantage incorporates by reference all preceding responses.

39.     The allegations in Paragraph 39 are incomplete and misleading and on that basis are denied.

40.     LifeVantage is without sufficient information to admit or deny the allegations in Paragraph 40 and on that basis denies them.

41.     The allegations of Paragraph 41 are denied.

42.     The allegations of Paragraph 42 are denied.

## DELANEY PARTIES' FOURTH CAUSE OF ACTION
### (Declaratory Judgment – Policies and Procedures Not Binding on Delaneys or TMP)

43.     LifeVantage incorporates by reference all preceding responses.

44.     The allegations of Paragraph 44 are denied.

45.     The allegations of Paragraph 45 are denied.

46.     The allegations of Paragraph 46 are denied.

## DELANEY PARTIES' FIFTH CAUSE OF ACTION
### (Declaratory Judgment Invalidating the Non-Solicitation Provision in LifeVantage's Policies and Procedures)

47.     LifeVantage incorporates by reference all preceding responses.

48.     As to Paragraph 48, LifeVantage's  Policy and Procedures speak for themselves, any contrary allegations or characterization are denied.

49.     The allegations of Paragraph 49 are denied.

50.     The allegations of Paragraph 50 are denied.

## DELANEY PARTIES' SIXTH CAUSE OF ACTION
### (Misappropriation of Likeness/Abuse of Personal Identity Under Utah Code Ann. § 45-3-3)

51.     LifeVantage incorporates by reference all preceding responses.

52.     The allegations of Paragraph 52 are denied.

53.     This allegation of Paragraph 53 is a legal statement to which no response is required, and to the extent a response is required the allegations are denied.

54.     The allegations of Paragraph 54 are denied.

55.     The allegations of Paragraph 55 are denied.

56.     The allegations of Paragraph 56 are denied.

57.     The allegations of Paragraph 57 are denied.

58.     The allegations of Paragraph 58 are denied.

### DELANEY PARTIES' SEVENTH CAUSE OF ACTION
### (Tortious Interference)

59.     LifeVantage incorporates by reference all preceding responses.

60.     The allegations of Paragraph 60 are denied.

61.     The allegations of Paragraph 61 are denied.

62.     The allegations of Paragraph 62 are denied.

63.     The allegations of Paragraph 63 are denied.

### DELANEY PARTIES' EIGHTH CAUSE OF ACTION
### (Wrongful Designation of Independent Contractor Status)

64.     LifeVantage incorporates by reference all preceding responses.

65.     The allegation of Paragraph 65 is a legal statement to which no response is
required, and to the extent a response is required the allegations are denied.

66.     The allegations of Paragraph 66 are denied.

67.     The allegations of Paragraph 67 are denied.

68.     The allegations of Paragraph 68 are denied.

### DELANEY PARTIES' NINTH CAUSE OF ACTION
### (Breach of Contract – Failure to Properly Account for and Pay Commissions)

69.     LifeVantage incorporates by reference all preceding responses.

70.     As to the allegations of Paragraph 70, LifeVantage admits that the Delaneys
entered into an Independent Distributor Application and Agreement, which incorporates
LifeVantage's Policies and Procedures, and which are valid and enforceable contracts.

71.     The allegations of Paragraph 71 are denied.

72.     As to Paragraph 72, the Distributor Application and Agreement and Policies and Procedures speak for themselves, any contrary allegations or characterizations are denied. The remaining allegations of paragraph 72 are denied.

73.     The allegations of Paragraph 73 are denied.

74.     The allegations of Paragraph 74 are denied.

75.     The allegations of Paragraph 75 are denied.

To the extent that any response is required to Delaney Parties' Prayer for Relief, LifeVantage denies the allegations contained therein, and any entitlement of the Delaney Parties to any relief whatsoever.

Notwithstanding the aforementioned, any allegations contained in the Delaney Parties Complaint not specifically admitted are hereby denied.

## AFFIRMATIVE DEFENSES

LifeVantage alleges the following separate and affirmative defenses to the Complaint, and in so doing, do not assume the burden to establish any fact or proposition necessary to that defense where that burden is properly imposed on Counterclaimant.

## FIRST AFFIRMATIVE DEFENSE
### (FAILURE TO STATE A CLAIM)

The Delaney Parties fail, in whole or in part, to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (FAILURE TO PLEAD DEFINITE FACTS )

The Delaney Parties fail to plead the allegations in the Counterclaims with sufficient particularity and definitiveness, including, but not limited to, the fact that the Complaint fails to state and identify the facts supporting their allegation that LifeVantage failed to account for and pay commissions and the facts supporting their allegation that LifeVantage used improper means constituting tortious interference.

## THIRD AFFIRMATIVE DEFENSE
### (ACQUIESCENCE, WAIVER AND ESTOPPEL)

The Delaney Parties' claims are barred, in whole or in part, by the doctrines of acquiescence, waiver and/or estoppel.

## FOURTH AFFIRMATIVE DEFENSE
### (UNCLEAN HANDS)

The Delaney Parties' claims are barred, in whole or in part, by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE
### (OWN CONDUCT)

The Delaney Parties' claims are barred because the losses sustained, if any, are solely, or at least substantially, the result of their own actions.

## SIXTH AFFIRMATIVE DEFENSE
### (MITIGATION)

The Delaney Parties are barred from claiming damages and losses, if any, because they have failed to make reasonable efforts to mitigate such damages and losses, which would have prevented or reduced the damages or losses, if any.

## SEVENTH AFFIRMATIVE DEFENSE
### (NO INTENTIONAL CONDUCT)

The Delaney Parties' claims are barred, in whole or in part, to the extent that LifeVantage has not knowingly interfered with the Delaney Parties existing or potential economic relations.

## EIGHTH AFFIRMATIVE DEFENSE
### (STANDING)

One or more of the Delany Parties lacks standing to bring or maintain one or more of the claims.

## NINTH AFFIRMATIVE DEFENSE
### (FIRST BREACH)

With respect to the contract existing between the parties, the Delany Parties committed the first breach which has not been remedied.

## TENTH AFFIRMATIVE DEFENSE
### (GOOD FAITH BUSINESS PRACTICE)

LifeVantage's actions were justified, just and proper exercises of business judgment and management discretion and were undertaken for fair, honest, legitimate, non-discriminatory, non-retaliatory business reasons, and with good faith.

## ELEVENTH AFFIRMATIVE DEFENSE
### (OPINION AND PRIVILEGE)

Any representations alleged to have been made by LifeVantage amount to statements of opinion and, accordingly, even if made, are not actionable, and are protected by applicable privilege and/or justification, precluding recovery under any intentional interference theory.

## TWELFTH AFFIRMATIVE DEFENSE
### (PUNITIVE DAMAGES)

The Delaney Parties' complaints do not support an award of punitive damages under UTAH CODE ANN. § 78-18-1 or other applicable law, punitive damages are otherwise not permissible and an award of punitive damages as claimed by the Delaney Parties violates Article I, § 10[1] and/or the Fourth, Fifth, Sixth, Eighth and/or Fourteenth Amendments of the United States Constitution and the Utah Constitution.

## ADDITIONAL DEFENSES

LifeVantage reserves the right to amend and/or supplement the averments of its Answer to assert any and all pertinent defenses ascertained through further investigation and discovery of this action. LifeVantage will rely on all defenses that may become available during discovery or trial.

## LIFEVANTAGE'S COUNTERCLAIMS

### GENERAL ALLEGATIONS
### LifeVantage's Business.

1.      LifeVantage is a network marketing company based in Sandy, Utah that sells nutraceutical and other health and well-being products.

2.      Network marketing involves a salesforce of independent sales persons. LifeVantage refers to these individuals as Independent Distributors. LifeVantage has approximately 100,000 Independent Distributors world-wide.

3.      Independent Distributors are remunerated pursuant to a compensation plan, which provides for a structured series of commissions and bonuses based upon sales volume.

Independent Distributors' compensation includes commissions from their own retail sales as well as a percentage of the sales of their "downline" sales network.

4.      An Independent Distributors' "downline" consists of all other LifeVantage Independent Distributors sponsored by that individual, as well as all Independent Distributors enrolled by those Independent Distributors.  A successful Independent Distributor may have dozens of individuals in their "downline."

5.      The highest level an Independent Distributor can attain at LifeVantage is referred to as a "Master Pro 10" Independent Distributor.

6.      LifeVantage's Independent Distributors are an essential component of its business success.  Without Independent Distributors, who function as a significant source of the company's sales force, LifeVantage cannot effectively sell products or generate revenue.

7.      LifeVantage is indispensable to Independent Distributors' efforts in building a downline.  LifeVantage provides the highly sought after health and well-being product offerings and the forum and community that Independent Distributors need to build a successful network business.  LifeVantage invests heavily in its resources used by Independent Distributors.

8.      LifeVantage has been highly successful in marketing its products domestically and abroad and is ranked as one of Direct Selling News' "Global 100" network marketing companies.

**The Delaney Parties.**

9.      The Delaneys are a married couple who currently reside in Oro Valley, Arizona. This Court has personal jurisdiction over the Delaneys who are parties to contracts with LifeVantage, described *infra*, in which they consent to personal jurisdiction and venue in courts

located in Utah.  Jurisdiction is also proper in this forum because Defendants have transacted business in Utah and have caused damage to LifeVantage within the State of Utah.

10.    The Delaneys separately enrolled as LifeVantage distributors on or around May 18, 2009.  They were issued LifeVantage Account Nos 100043 (the "043 Account") and 100045 (and later sub accounts 124061 and 124063) (collectively the "045 Account"); the 043 Account was issued to Bill Delaney and the 045 Account to Cynthia.

11.    According to records filed with the Arizona Secretary of State, in 2011, the Delaneys formed TMP, an Arizona Limited Liability Company.  In 2012 the Delaneys changed the name on the 045 account to that of TMP, but agreed that this did not effect a transfer of the distributorship to TMP.  TMP itself, is not now, and has not been a LifeVantage Distributor.

12.    No change was made to the 043 account which had remained active since 2009.

13.    The Delaneys agreed in the LifeVantage Policy & Procedures (the "Policies and Procedures"), that any liability, obligations or duties that were owed to LifeVantage both by the entity itself and by its members.  The entity and the owners were jointly and severally liable to LifeVantage to perform the duties under the Policies and Procedures.

14.    Since joining LifeVantage, the Delaneys (not TMP) have built a successful business.  They have attained Master Pro 10 status, the highest level an Independent Distributor can attain at LifeVantage.

15.    The Delaneys agreed in the Distributor Agreement that LifeVantage could use their name, photograph, personal story and/or likeness in advertising/promotional materials and for the six months immediately after the Agreement's cancellation.  Specifically, they waived all claims for remuneration for such use of their likeness and image.

16.     Due to Delaneys' conduct in breach of their agreements with LifeVantage has suspended the 043 Account and the 045 Account.

**The LifeVantage Independent Distributor Agreement.**

17.     When individuals such as Defendants apply to become Independent Distributors, they do so online at LifeVantage's website (http://www.lifevantatge.com).

18.     Once on LifeVantage's website, the prospective distributer is presented with the option to "Join Us."

19.     Once a prospective user clicks on the "Join Us" link, the prospective distributer is taken to a webpage containing the registration form that the prospective user must complete and submit in order to become a LifeVantage Independent Distributor.

20.     As part of the registration process, a prospective user is required to acknowledge that he or she agrees to and accepts the terms of the Independent Distributor Application and Agreement ("the Agreement"), which provides the terms and conditions that govern the relationship between LifeVantage and the prospective distributer.  This Agreement expressly incorporates the Policies and Procedures (*see* Agreement at § 9.3).  A prospective distributor must acknowledge that he or she has read and agreed to both.  A copy of the Agreement dated April 2, 2009 and the Policies and Procedures dated February 11, 2016 are attached as Exhibit 1.

21.     At the time that the Delaneys became fully enrolled Independent Distributors, they agreed to the terms and conditions contained in the Agreement and the Policies and Procedures.

22.     Each year, the Agreement is automatically renewed if the Independent Distributor is in good standing and their paid fees are up to date.  Policies & Procedures, § 3.3 (Ex. 1).

23.     An Independent Distributor is entitled to rebates, commissions, and bonuses – so long as the Independent Distributor is "active and in compliance with the Agreement" (Policies & Procedures, § 12.1 (Ex. 1)).  A remedy for "[a]ny breach of the Agreement, including these Policies and Procedures" includes "[l]oss of rights to one or more bonus and commission checks; in whole or in part." *Id.* at § 14.1 (4).  LifeVantage "insist[s] on compliance with the Agreement . . . governing the conduct of an Independent Distributor."  *Id.* at 2.6.  LifeVantage conditions all statements regarding residual income on a distributors' continued compliance and good standing with respect to their obligations to LifeVantage.

24.     As part of their Agreement, the Delaneys agreed to avoid Conflicts of Interest, as defined in the Policies & Procedures (§ 6 (Ex. 1)).  For example, although the Policies & Procedures allow Independent Distributors to "participate in other direct selling or network marketing or multilevel marketing ventures,", they must adhere to restrictions prohibiting contact with other LifeVantage Distributors.  The Conflict of Interest polices are intended to "[p]rotect the rights of all Independent Distributors by providing a framework within which each Independent Distributor may work in an ethical, effective and secure manner."  *Id.* at § 1 (1).

25.     The Delaneys agreed that they "shall not engage in any actual or attempted recruitment or enrollment of a LifeVantage Independent distributor for other Network Marketing Ventures, either directly or through a third party."  *Id.* at § 6.1.

26.     The Policies and Procedures define a "Network Marketing Venture" as "other direct selling or network marketing of multilevel marketing ventures."  *Id.* at § 6.

27. During the term of the Agreement, Defendants agreed they "may not sell, offer to sell, or promote any competing non-LifeVantage products or service to LifeVantage Independent Distributors." *Id.* at § 6.1(2).

28. Defendants agreed to restrictions on communication and confidentiality of downline information. They acknowledged that the information contained in downline reports was "confidential and constitute proprietary information and business trade secrets and are owned exclusively by LifeVantage." *Id.* at § 7.1. Downline reports could not be used "for any purpose other than promoting [Defendants] LifeVantage Independent Distributorship." *Id.* at § 7.1 (3). Information pertaining to downlines could not be used to "[r]ecruit or solicit any Independent Distributor . . . listed on any report . . . to alter their business relationship with LifeVantage." *Id.* at § 7.1 (4).

29. In the event the above terms are breached, LifeVantage is permitted to seek injunctive relief in a Utah court. Policies & Procedures, §§ 14.3 and 14.4 (Ex. 1). The Delaneys agreed that any "breach of the [Policies & Procedures] would cause LifeVantage irreparable harm" and that as a result, LifeVantage "shall be entitled, without the necessity of posting a bond or other security, to the issuance of injunctive relief." *Id.* at § 14.4.

30. In the Policies and Procedures, Independent Distributors are deemed to be independent contractors. Policies & Procedures, §§ 4.5 (Ex. 1). LifeVantage does not treat Independent Distributors as employees and only sets broad parameters within which Independent Distributors operate, LifeVantage does not have a high degree of control over the time, place, conditions, instrumentalities and manner in which Independent Distributors network and sell.

Further, LifeVantage does not "hire" Independent Distributors – rather (the other way around) – Independent Distributors enroll with LifeVantage.

**Defendants Unlawful and Improper Solicitation of
LifeVantage Independent Distributors**

31.     The Delaney's have separate Facebook accounts:

(i) https://www.facebook.com/bill.delaney.75; and

(ii) https://www.facebook.com/cynthia.delaney.104.

The Delaneys have Facebooks friends, many hundreds of whom are LifeVantage Distributors.  The Delaneys also use other social media platforms to promote their business.

32.     On May 15, 2016, the Delaney's published a social media post on both personal Facebook pages announcing that they intended to pursue another network marketing venture.  A Facebook Screenshot of the communication is attached hereto, Mr. Bill Delaney's as Exhibit 2 and Ms. Cynthia Delaney's as Exhibit 3.

33.     The May 15 Facebook posts described many details and elements of this new network marketing business.  Ex. 2 at 1, 3 at 1.  The Delaneys touted that joining this new business was "[t]he chance to create history with something NEVER before seen or done in network marketing" and that the new business's "product offering" was responding to "overwhelming universal market demand" . . . with a potential market of "tens of millions of people . . . and . . . 4 trillion dollars annually in the USA, alone." *Id.*  The Delaneys stated in the Facebook posts that they were "still pinching [them]selves with the magnitude of [the business opportunity] [t]hat has fallen into [their] laps." *Id.*  They touted that this new business presented a "[a] genuine and legitimate . . . ground-floor opportunity." *Id.* at 2.  And invited those who received the post to "just imagine what that means." *Id.*  They indicated that they were

"assembling an army of entrepreneurs" and wanted "to help hundreds of our friends become millionaires and free hundreds of thousands of families from financial strife." *Id.* They described the opportunity as a "state-of-the-art, innovative, dynamic and totally up-to-date wealth creating compensation plan based upon the best brain trust of 2016; formulated, designed and tested by some of the most experienced and successful corporate and distributor leaders in the world." *Id.* In short, they described that the "the decision to participate would be a no-brainer." *Id.* And concluded that they "can't wait for our continued experiences and victories together." *Id.*

34.     The opportunity that the Delaneys were touting in their May 15 Facebook post is known as GR Direct, LLC and/or Global Rescue Direct, LLC (together "GRD"). *See* Complaint at ¶ 17. A copy of GRD's "Launch Notes" are attached as Exhibit 4. The principals of GRD appear to be former high ranking LifeVantage employees. *Id.* at 18.

35.     GRD states that it intends to market a health care solution, one it describes as disruptive to the established medical service and consumables industries. *See* Ex. 4. GRD, thus, intends to compete in the market place with LifeVantage's existing health and well-being business.

36.     Many LifeVantage Independent Distributors are members of Defendants' Facebook network and the Facebook post was directed at them. The Delaneys have justified their conduct in making this announcement to LifeVantage Independent Distributors claiming that they did not "invite anyone to join GRD or even reference GRD." *See* Complaint at ¶ 22. This is incomplete and misleading. Their Facebook post clearly references GRD, not by name, but by describing its business and the opportunity associated with it.

37.     The Facebook post was designed to invite inquiries for further information and meets the definition of recruiting.  Many of the Facebook posts evidence this simple fact.  For example, on Bill Delaney's Facebook page, Facebook user and LifeVantage Independent Distributor Tesha Connell Tepper commented "Intrigued"; Facebook user and LifeVantage Independent Distributor Tina Moore commented "Looking forward to hearing all about it!!,"; Facebook user and LifeVantage Independent Distributor Ed Marvel commented "very curious"; Facebook user and LifeVantage Independent Distributor Alison Carpenter commented "Ok, I admit, the curiosity is getting me!,"; and Facebook user and LifeVantage Independent Distributor Shawn Swore Atay commented "Can you give us a hint??".  *See* Ex. 2 at 3.  On Cynthia Delaney's page Facebook user and LifeVantage Independent Distributor Pamela Higginson Jaussi commented "So how do we learn about what else you are doing?" *See* Ex. 3 at 3.

38.     The Delaney's obligations to avoid conflict of interest includes more than a prohibition against direct invitations to join a company like GRD.  They are specifically prohibited from any "recruitment" activity, and specifically, they are prohibited from "attempted" or "implicit" recruiting to another network marketing company (which again, this post clearly is).  The Delaneys are further prohibited from promoting any competing product, and as GRD is in the same general business of health and well-being solutions as LifeVantage (see *supra* ¶ 35), the Delaneys have violated that obligation also.

39.     Defendants published a follow-up Facebook posting, which stated:

> Ok everyone, due to confusion and inaccurate statements we will clarify.  We are not leaving LifeVantage, but we are diversifying.  If you hear that we are leaving, that is simply not true and did not come from us.  Love, the Delaney's.

Ex. 2 at 3, 3 at 3.

40.     In doing so, the Delaneys have attempted to justify their initial post by stating, that they were not leaving LifeVantage.  This statement is, however, incomplete and misleading, because the controversy between LifeVantage and the Delaney Parties is not whether the Delaneys did or did not leave LifeVantage.  Rather, it is whether they breached their LifeVantage conflicts-of-interest obligations.  By actively and heavily promoting and recruiting LifeVantage Distributors to GRD, they have.

41.     The Delaney Parties' recruiting efforts did not begin or end with the May 15, 2016 Facebook post.  The Delaneys have been active in personal recruiting LifeVantage distributors to join GRD.  Contemporaneous with the Facebook posts, Defendants have made direct efforts to target LifeVantage distributors and recruit them.

42.     On or around May 15, 2016, Ms. Melissa Brewton, a LifeVantage Independent Distributor, was contacted via phone by her enroller and fellow distributor, Ellen Crow.  *See* Decl. of Melissa Brewton (May 23, 2016), at ¶ 5, attached hereto as Exhibit 5.

43.     Ellen Crow had been recruited to GRD by the Delaneys.  Ellen Crow is a high level LifeVantage Independent Distributor.

44.     Ms. Crow announced during her call with Ms. Brewton call that she was joining the Delaneys in another network marketing opportunity and soon thereafter, Bill Delaney got on the same telephone line and spoke to Ms. Brewton about GRD.  *Id*. at ¶ 7.  Bill Delaney described the network marketing venture to her as an "incredible opportunity."  *Id.*  Bill Delaney then asked Brewton to join them for a meeting to discuss the opportunity further.  *Id*. at ¶ 10.

45.     Ms. Brewton is in the Delaneys' downline, but was not enrolled or sponsored by them.

46.     Later that day, an Independent Distributor in Ms. Brewton's downline (LeeAnn Ray) called her and informed her that she had attended a meeting with the Delaneys and was going to join the Delaneys in a new network marketing business venture.  *Id*. at ¶ 11.  Ms. Ray is in the Defendants' downline, but was not enrolled or sponsored by them.

47.     Other Independent Distributors in Ms. Brewton's downline have left LifeVantage for a new network marketing after being recruited by the Delaneys.  *Id*. at ¶ 12.

48.     Other examples of the Delaney's recruiting include, LifeVantage Distributor Joy Budner.  *See* Decl. of Joy Budner (May 25, 2016) attached hereto as Exhibit 6.  She received a LinkedIn contact request from Defendant Cynthia Delaney, who she had never met.  *Id.*  Soon thereafter she received a message from Defendant Cynthia Delaney touting a new network opportunity.  *Id.*

49.     The Delaneys have recruited LifeVantage Independent Distributors directly and through proxies.  What the Delaneys' cannot do under the terms of the Policies and Procedures cannot be made right when it is done by others at the behest of the Delaneys.

50.     LifeVantage's compliance department received calls and emails from Independent Distributors notifying the company of the Delaneys recruiting efforts on behalf of GRD.

51.     Independent Distributors have informed LifeVantage of the lengths the Delaneys (and their agents) have gone too to make it appear like the Independent Distributor have approached the Delaneys and their agents and not the other way round.  For example, by asking the targeted Independent Distributor to send fabricated text messages or emails of inquiry, and asking targeted Independent Distributors to sign false statements regarding the purpose of the information they have received from a recruiter.

52.     LifeVantage became aware of these recruiting actions on or around May 16, 2016 and immediately wrote to the Delaneys notifying them of the reported violations of their conflict-of-interest obligations.  As a result the Delaneys' accounts were suspended pending investigation.  LifeVantage requested the Delaneys assist and cooperate in resolving the matter. The Delaneys have not cooperated with LifeVantage's investigation and have instead filed this suit.

53.     After filing the suit, the Delaneys posted a copy of the Complaint on their Facebook page, a copy of the postings are attached as Exhibit 7 (Bill Delaney) and Exhibit 8 (Cynthia Delaney).

**Continuing Harm Caused by the Delaneys**
**Defendants' Wrongful Acts**

54.     LifeVantage's business goodwill is inextricably linked to the viability of its Independent Distributor network because those distributors are a significant source of the company's sales force.

55.     There is a significant risk of a loss of momentum and a cascading effect of defections to the new company if a high-level Independent Distributor begins diverting his or her downline.

56.     The damage caused by improper recruiting is often not fully captured by the number of people who may actually cancel their LifeVantage distributorships.  Many distributors who are recruited to a competing company simply become inactive or reduce their LifeVantage purchases and activity, or they stop sponsoring other distributors and building their LifeVantage business.  That damage is as severe as those caused by the actual cancellation of a LifeVantage

distributorship, can be devastating for the company and cause irreversible damage to LifeVantage's business goodwill.

57.     Actions by the Delaneys seeking to recruit LifeVantage's Independent Distributors to join GRD are enormously disruptive and cause LifeVantage irreparable harm—much more so than solicitations by strangers.  This is particularly true for the Delaneys who, as Master Pro 10 level Independent Distributors, had a highly visible status in LifeVantage's network.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract (Conflict of Interest)**

58.     LifeVantage incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

59.     The Delaneys Agreement with LifeVantage, including the Policies and Procedures, is a valid and enforceable contract with LifeVantage.

60.     Up until the Delaneys' breach of the Distributor Agreement, LifeVantage has performed and satisfied all obligations owing to Defendants under their Distributor Agreement.

61.     Pursuant to the Independent Distributor Agreement, the Delaneys agreed not to recruit or solicit other LifeVantage distributors and employees; not to sell, offer to sell, or promote any competing non-LifeVantage products or services to LifeVantage distributors or customers and not to use LifeVantage's confidential information for any purpose other than promoting LifeVantage.

62.     The Delaneys have breached the above covenants by, directly or indirectly, contacting LifeVantage distributors and employees for the purpose of recruiting and soliciting, them to join another direct sales company.

63.     As a result of the Delaneys' material breaches of contract, LifeVantage has sustained damages.

## SECOND CLAIM FOR RELIEF
### Breach of Implied Covenant of Good Faith and Fair Dealing

64.     LifeVantage incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

65.     The Delaneys' Agreement with LifeVantage includes a covenant of good faith and fair dealing between the parties to that contract.

66.     The Delaneys have breached the implied covenant of good faith and fair dealing by breaching confidentiality and non-solicitation provisions in contravention of the clear intent and design of the Agreement, and by surreptitiously stacking their account.

67.     The Delaneys have attempted to avoid their conflict of interest obligations under their Agreement with LifeVantage by having others participate in the recruiting efforts.  This subterfuge is an attempt to evade their contractual duties and rob LifeVantage of the protections of the Agreement in bad faith.

68.     The Delaneys have also withheld information from LifeVantage in order to inflate the commissions they were paid under the Agreement.

69.     LifeVantage is entitled to recover damages from the Delaneys associated with these breaches of the implied covenant.

## THIRD CLAIM FOR RELIEF
### Tortious Interference with Current and Prospective Economic Relations

70.     LifeVantage incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

71.     The Delaneys have intentionally interfered with LifeVantage's prospective economic relations by actively recruiting LifeVantage's Independent Distributors and causing them to do likewise.

72.     The Delaneys know that all LifeVantage's Independent Distributors are bound by agreements not to solicit or recruit other LifeVantage's Independent Distributors to participate in or sell other network products.  In spite of this knowledge, the Delaneys have willfully and deliberately induced LifeVantage's Independent Distributors to violate the obligations arising under their respective Agreements with LifeVantage.

73.     The means by which the Delaneys intentionally interfered with LifeVantage's economic relations were improper.  In particular, the Delaneys have used misrepresentation and misappropriated proprietary information in recruiting LifeVantage's Independent Distributors.

74.     As a direct and proximate result of The Delaneys' actions, LifeVantage has been damaged in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**Injunctive Relief**

75.     LifeVantage incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

76.     The Delaneys' material breach of contract and their continuing breach of the Policies & Procedures has caused, and will continue to cause, irreparable harm to LifeVantage.

77.     Any legal remedies available to LifeVantage will be inadequate to compensate for the harm it has suffered and will continue to suffer as a result of the Delaneys' actions.

78.     The Distributor Agreement, as well as the associated Policies & Procedures, expressly provide for injunctive relief to enforce the terms of the respective agreements.

79.     LifeVantage is entitled to a temporary, preliminary, and thereafter permanent, injunction restraining the Delaneys, either directly or through others, from recruiting or soliciting other LifeVantage distributors and employees to another network marketing venture, including, without limitation, through in-person meetings, phone calls, text messages, social media, email solicitations, and other means, during the term of the Agreement and for a period of one (1) year from the termination date thereof or until such later date(s) as deemed just and equitable.

80.     LifeVantage is entitled to a preliminary, and thereafter permanent, injunction against the Delaneys providing the above injunctive relief on the basis that:

        a.      LifeVantage has suffered, and will continue to suffer, immediate and irreparable harm unless an injunction is issued;

        b.      the threatened and ongoing injury to LifeVantage from the Delaneys' conduct outweighs whatever purported harm the proposed injury may cause to them;

        c.      injunctive relief, if issued, would not be adverse to the public interest; and

        d.      there is a substantial likelihood that LifeVantage will prevail on the merits, or this case presents serious issues on the merits which should be the subject of further litigation.

81.     No security should be required to be posted, since the injunctive relief sought simply would maintain the status quo.  Additionally, the Independent Distributor Agreement, as well as the associated Policies & Procedures, expressly provide that LifeVantage shall be entitled to injunctive relief without the necessity of posting a bond.

## FIFTH CLAIM FOR RELIEF
### Declaratory Judgment

82.     LifeVantage incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

83. The Delaneys' Agreement with LifeVantage, including the Policies and Procedures, is a valid and enforceable contract with LifeVantage.

84. LifeVantage has performed and satisfied all obligations owing to the Delaneys under their Independent Distributor Agreement.

85. Pursuant to the Independent Distributor Agreement, the Delaneys agreed not to recruit or solicit other LifeVantage distributors and employees; not to sell, offer to sell, or promote any competing non-LifeVantage products or services to LifeVantage distributors or customers and not to use LifeVantage's confidential information for any purpose other than promoting LifeVantage.

86. The Delaneys have breached the above covenants by, directly or indirectly, contacting LifeVantage distributors and employees for the purpose of recruiting and soliciting, them to join another direct sales company.

87. LifeVantage has relied upon the promises and representations of the Delaneys that they would comply with the Policies and Procedures.

88. The plain language of the Policies and Procedures provides that an Independent Distributor is entitled to rebates, commissions and bonuses only so long as the Independent Distributor is in compliance with the Agreement and that as a remedy for a breach an Independent Distributor would lose the right to one or more bonus and commission checks; in whole or in part.

89. In accordance with Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 LifeVantage is entitled to a declaration from this Court that the Delaneys are not entitled to rebates, commissions and/or bonuses under their Agreement with LifeVantage as of the date of

their breach of the Agreement as described herein and a declaration that LifeVantage is complying with the Policies and Procedures in refusing or otherwise withholding payment.

WHEREFORE, LifeVantage prays for the following relief:

1.      For proximate and consequential damages caused by the Delaneys' breaches of the Distributor Agreement and Policies & Procedures, the exact amounts to be determined at trial, but in excess of $75,000.00.

2.      For temporary, preliminary and permanent injunctive relief restraining the Delaneys, either directly or through others, from recruiting or soliciting other LifeVantage distributors and employees to another network marketing venture, including, without limitation, through in-person meetings, phone calls, text messages, social media, email solicitations, and other means, during the term of the Agreement and for a period of one (1) year from the termination date thereof or until such later date(s) as deemed just and equitable.

3.      For declaratory relief, including a judgment and decree that the Delaneys are not entitled to rebates, commissions and/or bonuses under their Agreement with LifeVantage as of the date of their breach of the Agreement as described herein and continuing, and a declaration that LifeVantage is complying with the Policies and Procedures in refusing or otherwise withholding payment.

4.      For costs and attorney fees.

5.      For such further relief as the Court deems just and equitable.

DATED this 1st day of August, 2016.

HOLLAND & HART LLP


/s/ Cecilia M. Romero
Cecilia M. Romero
John P. Harrington
Nathan Archibald
*Attorneys for Plaintiff LifeVantage Corporation*

## <u>EXHIBITS</u>

Exhibit 1:     LifeVantage Policies and Procedures (dated April 1, 2015)
Exhibit 2:     Facebook Post May 16, 2016 (B Delaney)
Exhibit 3:     Facebook Post May 16, 2016 (C Delaney)
Exhibit 4:     GR Direct Launch Notes (undated)
Exhibit 5:     Declaration of Melissa Brewton (May 23, 2016)
Exhibit 6:     Declaration of Joy Budner (May 25, 2016)
Exhibit 7:     Facebook Post May 24, 2016 (B Delaney)
Exhibit 8:     Facebook Post May 24, 2016 (C Delaney)

8801792_6